Panel is pleased to recognize the participation today of Judge James Robertson from the United States District Court for the District of Columbia, sitting with us as a visitor. Extra duty, extra devotion to administration of justice, so we appreciate his presence and participation and his willingness of his court to lend him. The panel has before it a total of six cases. Two of them will be submitted later today on the briefs without oral argument. They are Appeal No. 07-7104, Keele v. Department of Veterans Affairs, and Appeal No. 07-3139, Hudson v. Department of Health and Human Services. On our fourth case argument list, we'll hear argument first in Appeal No. 06-1571, Adenta GMBH v. Orthoarm. Mr. Reynolds, good morning. Welcome to you. Please proceed. May it please the Court. Reversal is mandated in this case for two primary reasons. The first is that American and Adenta had a common interest in seeing the 883 patent invalidated. American and Adenta did not have the requisite adverse legal interest necessary for declaratory judgment jurisdiction. And secondly, the oral testimony of Adenta's witnesses was not sufficiently corroborated as required for an anticipation finding, for an invalidity finding as anticipated. Look, in jurisdiction, Adenta advised Ortho and American that patent was invalid, stopped paying royalties, there was a threatening letter, and then on top of that we've got the recent Supreme Court decision which has apparently lowered the level for a case of controversy. Why isn't it clear that there's a case of controversy here? Because, Your Honor, although metamune and then the court's verbalization of the standard in cases like Sandus, Sandus suggests that the bar is lowered. The key to this case is that the facts are unusual. They're extremely unique because both the D.J. plaintiff, Adenta, and the patent owner, one of the D.J. defendants, both were paying royalties to Orthoarm under the patent. And as a result, they both stood to gain by invalidating the patent. And the facts throughout the litigation suggest that even if there was declaratory judgment jurisdiction based on the letter, which is the only- Then why did one sue the other if they were basically in league together? Because they wanted to put the validity of the patent at issue and invalidate it together. And the facts from that point on, from the point of the letter and the filing of the jurisdiction, filing of the D.J. action, make that clear. For example, in response, American, in its answer to its complaint, it took no position on the validity of the patent. It didn't even in its answer say, well, we claim the patent is valid. They said, we're neutral. We don't claim any interest in this patent at all. They didn't file any D.J. I mean, I'm sorry, Your Honor, they didn't file a compulsory counterclaim of a patent infringement lawsuit or a breach of contract action back against Adenda for these non-payment royalties that they suggest have. What are you suggesting? That the metamune test recently announced by the Supreme Court has an exception if it can be discerned that despite the existence of a license agreement, that somehow there's a lack of sufficient adversity of interest? Absolutely, Your Honor. Where in the opinion of the Supreme Court can you find any language suggesting such an exception? It goes back to Article III's requirement that it be a case or a contrivance. And this court and the Supreme Court say that there has to be an adverse legal interest when you look at all the among this total set of facts. And in metamune, of course, the licensor and licensee did have an adverse legal interest. And there was a counterclaim for patent infringement as a result of that. Arguably, there wasn't an adverse legal interest because they had a contract and weren't about to be sued. But they were on opposite sides of the contractual relationship. One was a licensor in the true sense of the word, and one was a licensee. In this case, that is not true. The answer where American affirmatively stated that it had no legal interest, the fact that American never counterclaimed, they didn't participate in the litigation at all. At any one of these points, if you believe that at the time of filing there was jurisdiction, they didn't show up at trial and were defaulted from the first trial that was declared a mistrial. And in the second trial, which this appeal was taken from, the counsel for American at the lawsuit, he showed up because he'd been earlier defaulted. He showed up and said, we don't take any position. And at that point, the jurisdiction was divested. If it ever existed in the first place under the totality of the circumstances. What about the validity of the patent? The invalidity of the patent? Yes, Your Honor. Tell us about it. The corroboration argument? Yes. Okay. The second reason we believe reversal is mandated is that the testimony, the Dentist's case was founded entirely on the testimony of four witnesses. All interested parties that testified that a bracket, like is shown in Exhibit 61, Trial Exhibit 61 is not a bracket that is allegedly from the trade show. It's just used as a model of what they say was there. All these witnesses testified that that bracket was at a trade show in 1994. Now, I want to briefly hit on each of those witnesses and explain why they're clearly interested. Hydra and Schindel were named D.J. claims. There's no question and there's no argument from a Dentist that they were interested. Lee Truenberg was American's Vice President of R&D, and as I mentioned, American was in the position of wanting this patent invalidated. Doesn't all this go to credibility and didn't a jury decide that there was an on-sale bar? No, Your Honor, because there's the legal issue of whether oral testimony alone is sufficient to There's a letter here from a German attorney admitting that the bracket was shown in an exhibition in the United States. But there's nothing about that document that tells you what the bracket is. Well, didn't his letter attach a proposed U.S. patent application? The proposed application, the best evidence we have of what that application covered were the Hydra, Schindel, and the record made clear that that's a different bracket than they testified was on display in Florida in 1994. So, if anything, that counts for this particular story. How can that be? I thought the whole thrust of Attorney Korner's letter was that because we displayed this bracket at a trade show many months ago, we need you, our U.S. patent agent, to in order to avoid the passage of the one-year grace period. And by attaching a proposed U.S. application to be filed, it seems to me the logic is that in order to beat the one-year time limit, it would make no sense to worry about the one-year time limit if the bracket that was at the trade show is different from the bracket in the patent application. But there's no way looking at that document, Your Honor, to tell what the bracket at the trade show was. Because it's different. If anything, it's a story. Well, I'm relying on the judgment of the German attorney. He obviously had to think that it was the same bracket or there would be no sense in his saying hurry up and file before the 12 months has expired since the trade show. Well, but he wasn't a witness at the trial, so we don't know what he was thinking. I'm inferring from what his letter said and what it attached that he had to be thinking that it's the same bracket that was at the trade show that's in the application I'm attaching to my letter. Well, the only thing we have, Your Honor, though, is the record, which the witnesses said it was not. Heiser and Schindel specifically testified it's not the same bracket that they say was shown at the trade show. And that's the problem, Your Honor. Are those the same witnesses that you want to derogate from as being interested? They're named DJ plaintiffs. They're named partners. Heiser and Schindel are the named plaintiffs along with the corporate entity, Adenta, that filed the DJ action. And that's what this case comes down to on the invalidity side, is that all you have is the oral testimony of these four witnesses. The documents, if you look at them, many of the documents that were cited by the district court as corroborative don't say anything about Florida at all or don't show any particular bracket, including the letter, Judge Michel, that came from this U.S. patent attorney, or came from the German patent attorney to a U.S. patent attorney, I believe is Exhibit 24. There's nothing about that document on its face that makes highly probable the oral testimony that was given in court. Because the oral testimony in court was specific. That's the only prior art that is relied on in this case, is that this bracket, as is like this bracket in Exhibit 61, that's what we say was at this trade show in 1994. Let me go back to something you said earlier to be sure I understood you correctly. I thought you said that our case law would require documentary corroboration of oral testimony. Did I hear you correctly? That's right, Your Honor. Where are you getting that? I'm getting that from, well, there's two parts to that. One is whether it's from interested witnesses or disinterested witnesses. If it's from interested witnesses, the case law is clear that that requires corroboration. I thought you said documentary corroboration. What I'm trying to get at is whether oral testimony can corroborate other oral testimony of an interested witness if the corroborating witness who's giving oral testimony is not an interested witness. Exactly. That's the second scenario where you have at least some of the witnesses who are disinterested. If you have some of the witnesses who are— Well, we have a holding by Judge Curran that the British sales guy, Russell, was not interested. Your Honor— And my recollection is that he testified at the trial and gave recollection testimony, which, let's assume for purposes of the question, was corroborative of the testimony of the two inventors. He testified at a deposition that was read into evidence at trial, so Judge Curran was not able to make any assessment of his demeanor and that sort of thing that goes to the veracity of the testimony. However, you're right, Your Honor, Judge Curran made that finding. That has to be reviewed and determined to be clearly erroneous. I think the fact that he had a long-term business relationship with Indenta was an exclusive representative. I understand that if we classify him as also interested, then he can't succeed in corroborating the first witness who is admittedly interested. Right. But if we agree with Judge Curran that Mr. Shaw is not interested, you seem to be suggesting that Shaw's testimony, read to the jury, nevertheless has to fail because its testimony not documented. You're right. Mr. Russell is— Pardon me. Russell. Your Honor, and I'd like to address that. That is our position. Our position is you've got to get to these documents and assess their sufficiency, and the reason is that the law of the Supreme Court in barbed wire cases is still good law, and that finds its way, its progeny goes through cases like Finnegan, decided by this court, that says that oral testimony alone, it's unequivocal, it says that oral testimony alone, whether from interested or disinterested parties, is not enough to invalidate a patent. That's what it says. Now, there is some dispute about that because there are cases from this court that in dicta suggest that oral testimony of a disinterested party or witness could be used to buttress the testimony of an interested witness. However, there's not a single case that we can find or that IDENTA found where that's the holding of the case, where this court found an invalidity, upheld an invalidity finding based only on oral testimony, be it from interested or disinterested witnesses. And the Supreme Court's case in barbed wire and its progeny, including cases like Finnegan, Woodland Trust, and Lacks Industries, still make that good law. So you've got to get to the documents, as I said. I don't think you can make this decision based just on the oral testimony. You get to the documents, and I submit, Your Honor, that if you look at all these documents, just a point of clarification, it says I have two and it's 45 seconds left, but I'm in my yellow already. Yeah, that means you're consuming your reserved rebuttal time. Okay. Thank you, Your Honor. If you look at these six documents that Judge Kern and the district court made its decision on, I think you'll find that IDENTA's evidence isn't even as good as in the barbed wire case, where they actually have a sample of a piece of barbed wire. And IDENTA's oral testimony needed to be corroborated by some sort of documentary evidence, and none of the documents on which the district court relied as being corroborative makes highly probable, or in most cases, even broadly relates to the specific story that was told in court. Therefore, the district court's invalidity judgment should be overturned as the jurisdictional finding. Thank you, Your Honor. Thank you, Mr. Reynolds. You have two minutes on rebuttal. Mr. Fredrickson, good morning. Good morning. Thank you, Your Honor. May it please the Court. I'd like to first address the jurisdictional issue. I believe that Judge Kern properly determined that there was subject matter jurisdiction based on the pre-med immune case law that he was faced with at the time. Did he so determine, or did he just act as though he determined it? Well, Your Honor, he did make a decision that... He went ahead with it. Well, he went ahead with it, Your Honor. The context is this. As the Court has pointed out, there is no dispute that there was a letter from IDENTA to Americans saying, we think this patent's invalid, we're not going to pay you any more royalties, and a letter back saying that if you breach this license, we're going to sue you. That was undisputed. Sounds like a case of controversy. And the defendant's position was, they didn't say that that on its face does not create a case of controversy, but instead argued, that's a contrivance, Your Honor. They never came out of the box and said there's no case of controversy.  But on the merits, with respect to the possible self-interest of all these witnesses, your opponent is sort of picking it one at a time and trying to cause this, as he would probably call it, house of cards to just finally collapse. Would you respond to that, please? Certainly. And I think the rule of reason that this Court has articulated as a framework for assessing corroborative evidence of oral testimony requires a consideration of all the evidence that's brought to bear. And no one piece of evidence needs to be conclusive on its face of demonstrating all the facts necessary to prove anticipation. Yeah, but what does it need to corroborate? Mr. Reynolds says, whatever you want to rely on needs to corroborate that the bracket shown in Exhibit 61 and no other bracket is what was displayed at the Orlando trade show. Do you agree with that? Well, I would just like to clarify slightly the record evidence, and that is that Exhibit 61 was from the same production lot of brackets as was shown by Mr. Heiser. I may have misspoke. I wasn't trying to suggest that the particular bracket shown in that exhibit or the similar photograph was the precise actual physical object, but it was a depiction of what the testimony said the bracket shown at the trade show was. And that is what ultimately needs to be corroborated. I agree with that point, Your Honor. Is there a photograph of Mr. Shendell or Dr. Heiser at the Florida conference with the bracket? We wouldn't be here, I submit, if we had that. Well, what is there? What's the strongest corroboration of that particular assertion? Well, again, I don't think there is a single piece of evidence that I can say. I'm not trying to limit you to one. I just want you to start with the one you think is the strongest, then you can add the others. Sure. Well, I'll start with the evidence of the communications by Mr. Russell immediately after the trade show, which are Exhibits 12 and 16. Now, I will grant right off the bat that none of those identify or describe the bracket in detail. But he goes back home, he gets an invitation to convey to Dr. Heiser to talk about his new bracket that was displayed at the show. It's a hot topic. Then in September, just three months later, in response to a request from Mr. Russell, Mr. Shendell sends him photographs. The request was, send me photographs of the bracket you have because I want to start marketing it. I want photographs of the bracket that you had at the show so I can start marketing my product. I'd like to market it in Great Britain. Mr. Shendell faxed him Exhibit 17, which contains photographs that are completely consistent with Exhibit 61, which is the exhibit, as the court pointed out, that is a depiction of. What do you mean consistent? Is it the same bracket or is it a similar bracket? It's the same. That photograph is the same as the bracket for Exhibit 61. So 61A and 17 are identical? Yes, sir. All right. Then, as the court pointed out, we have a pair of patent applications filed, one in Germany in March of 1994 and one in the United States in April of 1995. Both filed, the testimony is, because of the display of the bracket at the trade show in Orlando in May of 1994. If there are no records of what bracket was shown in Florida, how did Attorney Korner know to write the letter? Was he just guessing? No, Your Honor, I won't say that at the time there were no records because of the timing of when this dispute came up. We could not locate more complete records that might have contained a depiction of what Mr. Korner had seen at that point in time. Korner wasn't at the trade show, right? No, he was not. So he has to get it from somebody else that the bracket thought to be patented is the same one shown at the Florida trade show. Correct, but nonetheless it's a statement against interest, Your Honor. Why would he make a statement such as that if he didn't believe it and he's speaking on behalf of his clients or the clients in this case? Well, it just seemed to me very odd that there were no records, at least surviving, as to what was shown at the trade show. If it was of sufficient concern to the inventors that they had their attorney immediately try to follow up with the U.S. application. Well, Your Honor, as I said, I would much prefer to have put on a case with a photograph of the interests and parties dated showing what was actually on display at the trade show. But there really wasn't anything. No brochures, no posters, no photographs, no correspondence, no handouts, no diagrams, nothing. No sales. No sales, that's correct. No invoices. No invoices, that's correct, Your Honor. A sale is not required. No, I understand that. I mean, there is not a question before this court that a dented displayed, offered for sale, and publicly used a bracket, an orthodontic bracket at the Florida conference in 1994. Questions one and two of the special verdict asked that question, as pointed out in our materials. The defendants, Orthoarm, advised Judge Curran that they had no issue with the jury's answer to those questions. The only question was, what precisely was the substance of the bracket that was displayed at Orlando? The jury wasn't instructed on this question of corroboration at all. I mean, the word corroboration appears there, but the corroboration question wasn't really one of the issues presented to the jury. Is there any particular deference that we should be paying to the jury's verdict because of that? Well, the corroboration requirement, as I read the court's precedent, is a test to be applied by the court. It is a question of fact, however. And fairly recently in the Medicham versus Relapo case, it emphasized that that's a finding of fact and also emphasized that where, at least in part, the court's assessment of the corroboration is based on credibility of witnesses. Well, did somebody ask the judge to give an instruction on that point? No, Your Honor. Well, then wouldn't it normally be thought to be waived? Even if it would have been an instruction the court would have had to have given, if neither party sought it, it doesn't seem like it's appropriate to complain about it at this late date. I agree with the court in that respect, Your Honor. All right. What else? If I might speak just for a moment about our cross-appeal, Your Honor, and this issue of inequitable conduct. Judge Curran found as a finding of fact that the inventor, Dr. John Bedoris, had misrepresented himself to be the inventor in the subject matter of Claims 47 and 48. Yeah, but he found it was without deceptive intent. So, as I recall, you'll have to convince us that that was clear error on the evidence before him. I agree with you, Your Honor, on what the standard is. I fail to understand how the court can find that somebody signs an affidavit saying, I am the inventor of the subject matter of these patents, subject matter that he observed and commented glowingly on a dentist product, when he saw the subject matter in a dentist product, which is documented in evidence from Dr. Bedoris' own hand, that this is a great feature having a hole in the aperture of the shutter. I fail... This is not a case where he may have truly believed that he was the inventor and turned out to be wrong. This is a case where he saw our product, thought it was a great feature, inserted claims directed to that combination of features, and said to the Patent Office, I invented this. Now, I don't know how you can represent to be the inventor of something that you clearly got from somebody else without an intent to deceive the Patent Office. There is no effort made by Dr. Bedoris, the inventor, to say, I really thought of this way back when, I just forgot about it. In fact, he admitted that the British patent application, which he used to swear behind some other references during prosecution, did not include that feature, and he pointed to nothing else that said, I didn't invent the subject matter of those claims. But this is all your argument. We have findings by a district judge. It's awfully hard to overcome a finding of lack of intent. I understand, but I come back to the... To my view of the case, it is simply inconsistent with his first finding, that there was an intentional misrepresentation that I'm the inventor of this subject matter that I first saw in their product with no intent. And I appreciate the steepness of the standard in the hill that I'm climbing. I just don't see how anybody can reconcile those two findings as being consistent under the facts of this case. Fairly erroneous. That's my view, Your Honor.  that the judge had to draw, could not lawfully fail to draw an inference of deceptive intent from the circumstance you described. In the circumstances of this case, no. I certainly can conceive of cases where somebody innocently believes they're an inventor of subject matter and turn out to be wrong, but that is not this case. There is no evidence... We often talk in cases about reasonable inferences and permissible inferences, but I think it's rare if ever you're going to find an appellate court saying there was a mandatory inference, that the fact finder must infer X from Y. Then that's, I think, what you're asking us to do. As I said, I recognize the burden I'm facing and with all due respect, I believe, under this case, under these unique facts, that's warranted. You're still asking. I'm still asking, Your Honor. Now, you had one further point on cross-appeal, I believe? No other than the case that should also be found exceptional based on that, Your Honor. It's really the same point. Right. Just a different additional relief. Correct. Clearly, if you don't buy my argument on the one, I see the handwriting on the wall for the second point, Your Honor. All right. If I may, I'd like to... Well, we aren't deciding right now. We're just asking questions. I understand. But the two would stand or fall together. I think that's fair to say. Absolutely. Anything further? If I may, I'd like to reserve the remainder of my time for any rebuttal. Very well. Thank you. On the cross-appeal. On the cross-appeal only. Yes. All right. Mr. Reynolds. Thank you, Your Honor. A few brief points. First of all, as on my reply, first on the corroboration issue, it's very important, as I said, to look at these documents. And the best evidence that Mr. Fredericks has cited is Exhibits 12 through 17. If you look at 12 through 17, Exhibits 12 through 17, and I have the record sites if you like them, there's not one single mention of Florida or a trade show in those documents. There's no way to make the link based on those documents. And that's why these documents fail either in that regard or they don't relate to a specific bracket in some of the other cases. But those documents he cited do not mention Florida or a trade show at all. Counsel, even if they don't mention Florida at all, if there is some corroboration in the testimony of the other witnesses that they were in Florida, that they showed something in Florida, why isn't that corroboration enough for the finding of the district judge? Because there's nothing about those documents that make highly probable or even suggest that the oral testimony is any more likely to be true. So you're still back to just this oral testimony that you have to rely on in evaluating this pattern. Is the test highly probable or even suggest? Highly probable. Okay. My second point, Your Honor, just quickly, is metamune speaks to a totality of the circumstances, and that's what I think is different. A single letter doesn't do it because even though metamune may represent a lowering bar in one respect with a reasonable apprehension, we're looking at the totality of the circumstances, and that's just one of the circumstances. In your last 30 seconds, do you want to address the cross-appeal? Yes, Your Honor. Your Honor, I just want to say that the judge found there was no deceptive intent. The entire argument by Adventists founded upon Dr. Regers removing a dependent claim that related to an aperture. That's the only feature that is being argued he didn't quote-unquote invent, and I submit that that's a misunderstanding of what inventorship is and what the Patent Office procedure is. The aperture feature was in dozens of cited references. He just couldn't get back to his British application with respect to that feature. All other features were supported by his British application. That's why he had to remove that claim. Thank you, Your Honor. All right. Thank you, Mr. Reynolds. Mr. Fredrickson? Your Honor, I don't have any further response. Very well. All right. We thank you both, and we will take the appeal and cross-appeal under advisement. Thank you, Your Honor.